_____

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION
_____

| | |
|---|---|
| In re:<br><br>WESTERN INSURANCE COMPANY,<br><br>    Plaintiff,<br>vs.<br><br>DICK L. ROTTMAN, JEFFREY P. SHAFFER, JANICE LYNN BOWMAN, BRADLEY A. PEARCE, R. SCOTT ROTTMAN, and JOHN DOES 1 THROUGH 10 individuals<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL DISCOVERY (ECF NO. 43)**<br><br>**Civil No. 2:13-CV-436-DAK**<br>Honorable Dale A. Kimball<br><br>Magistrate Evelyn J. Furse |

_____

  Defendants Dick L. Rottman, Jeffrey P. Shaffer, Janice Lynn Bowman, Bradley A. Pearce, and R. Scott Rottman (the "Directors and Officers") move to compel 30(b)(6) deposition testimony from the Plaintiff Western Insurance Company ("Western") currently run through a Special Deputy Liquidator (the "Liquidator"). The Court GRANTS IN PART and DENIES IN PART the Motion as explained below.

  Western primarily argues that no circumstances exist under which the Directors and Officers can question the Liquidator about anything that has happened post-liquidation. Western cites Utah Code section 31A-27a-401(2) for the proposition that "the rights and liabilities of the insurer and of its creditors, policyholders, shareholders, members and all other persons interested in its estate shall become fixed as of the day on which the order of liquidation is entered." Neither the parties nor the Court found any decision, reported or unreported, interpreting this

1

statute.  Western bolsters its reading of the statute by citation to cases interpreting statutes from different states on affirmative defenses.

Western first cites *Foster v. Monsour Med. Found.,* 667 A.2d 18, 20 (Pa. Commw. Ct. 1995).  The *Monsour* case stands for the proposition that directors and officers of an insurance company in liquidation cannot assert affirmative defenses of failure to mitigate damages, contributory negligence, comparative negligence, assumption of the risk, estoppel, and waiver based on the insurance commissioner's failure as a regulator to intervene in the insurance company's business sooner.  Specifically, the court held "Any actions commenced by the Liquidator are on behalf of the insurance company and its creditors and policyholders." *Id.* The Directors and Officers do not contest this proposition and do not assert any of defenses rooted in the insurance commissioner's regulatory actions as a basis for the discovery sought.  Indeed, the Utah statute specifically prohibits any defense asserting action or inaction of the insurance commissioner in its regulatory capacity.  Utah Code Ann. § 31A-27a-111.  At the end of the opinion, the court, in dicta and without elaboration, states,

> Given this purpose, i.e., to protect the policyholders, the creditors and the public, the Statutory Liquidator's power to recover damages against the officers and directors and to recoup the assets of the liquidated insurer should not be encumbered by this Court's examination of the correctness of the Liquidator's actions during liquidation or the Insurance Commissioner's regulatory actions.

*Monsour,* at 21.

The court in *Foster v. Rockwood Holding Co.*, 632 A.2d 335, 338 (Pa. Commw. Ct. 1993), held that the insurance commissioner should not have "to defend each act of regulatory conduct in any action the Insurance Commissioner brings to recover damages for wrongdoing." As part of its reasoning, the court reiterated "'if there is no wrongdoing by the officer or director, there can be no liability, but if wrongdoing is established, the officer or director should not be

allowed to set up as a defense a claim that would permit the detailed examination' of the Insurance Commissioner's action as statutory liquidator." *Id.* at 339 (quoting *Fed. Sav. & Loan Ins. Corp. v. Burdette*, 718 F. Supp. 649, 663 (E.D. Tenn. 1989)).

Utah's statute provides immunity to the receiver in a number of circumstances. Utah Code Ann. § 31A-27a-114. Such immunity suggests claims of comparative fault for actions taken during liquidation would not succed. However, neither the statute nor the cases make clear whether defendants can assert that the amounts paid by the liquidator or to the liquidator limit the damages the liquidator can claim against defendants.

Western also cites a number of federal cases involving the liquidation of savings and loan institutions and the Federal Savings and Loan Insurance Corporation. This Court does not find those cases comparable to the liquidation of a private insurance company by the state of Utah. As noted by the court in *Burdette,* 718 F. Supp. at 664, "The special urgency required in the liquidation of a savings and loan, and a commercial bank, is a result of the special nature of the insurance fund and the procedure for collection and disbursements of assets as provided by Congress." Western has not shown that the factors the United States Congress had in mind in organizing the dissolution of a federally insured savings and loan are the same or even similar to the factors the Utah legislature considered in the providing for the liquidation of a private insurance company. Nor has Western shown that the Utah legislature came to the same decision as the United States Congress in how to manage the dissolution of an insurance company as compared to a savings and loan. Therefore, the Court does not rely on these cases in this decision.

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

1. **Judgments, Settlements, Litigation, and Claim Prioritization**

The Directors and Officers seek deposition testimony regarding topic numbers three and twenty-seven concerning judgments or settlements obtained by Western, litigation in which Western is engaged, and how Western has prioritized claims—all in relationship to the collateral and warranty programs. (Reply to Pl.'s Resp. to Mot. to Compel 3, ECF No. 47.) The Directors and Officers have failed to put forth sufficient support for the relevance and proportionality of testimony regarding prioritization of claims. Therefore, the Court denies the Motion as to prioritization.

As to judgments, settlements, and lawsuits concerning the collateral and warranty programs, because no cases interpret Utah Code section 31A-27a-401(2), its meaning remains open to interpretation. A court could construe the statute as allowing evidence of the outcome of litigation of a claim, either by judgment or settlement, as evidence of the value of that claim on the liquidation date depending on the circumstances of the settlement or judgment. While Western disputes this point, this discovery motion does not provide the venue for final determination of that dispute. Thus the discovery has relevance.

As to proportionality, the Court finds a 30(b)(6) inquiry into judgments, settlements, and litigation does not require a detailed examination into the propriety of the liquidator's actions in the way a comparative negligence or similar defense would. Rather, it requires inquiry into discrete facts that the liquidator should have readily available. The Court does not permit inquiry into the reasoning behind the Liquidator's actions or achievements. Thus, the burden of the

discovery on the Liquidator is not great, as compared to that imagined in *Monsour*. Moreover, the values of claims may go not only to the Directors and Officers' damages but also to liability given the allegation that their actions caused Western to become insolvent. Western argues that the size of the shortfall is so significant that the size of any claim could not possibly prove that Western was solvent on the day of the liquidation order. The Directors and Officers disagree with the assertion. Again, this discovery motion does not provide the venue for final determination of that dispute. Hence, the discovery is important to the Directors and Officers in determining the strength of their defenses.

Western also resists the 30(b)(6) deposition on this topic because an expert will later testify about damages and how the Liquidator determined Western was insolvent. That a party will offer expert testimony on damages subsequently does not prevent the Directors and Officers from having discovery into the facts underlying Western's damage claim prior to expert discovery. Certainly, to the extent either party wishes to conduct discovery on the factual basis for Western's damage claim, it must do so during fact discovery and may not wait until expert discovery. Furthermore, Western has superior access to these facts as compared with any other person or entity given Western is the common entity for all of these settlements, judgments, and litigations.

Furthermore, the Court finds a 30(b)(6) deposition on this topic, in addition to other topics noticed, does not present an overly burdensome task at this stage of the litigation given the potential relevant evidence it could provide for different aspects of the Directors and Officers' defense. Hence, the Court finds the discovery relevant and proportional and grants the Motion as to judgments, settlements, and lawsuits concerning the collateral and warranty programs. This

Court does not rule on the admissibility of this evidence but will allow discovery under these circumstances.

2. **Financial Status**

The Directors and Officers also seek deposition testimony on topic number twenty-two, regarding Western's financial status on the date of entry of the Liquidation Order. Western's financial status on that date has critical importance to the determination of liability and damages in this case. As noted above, that the parties will call experts to testify on this point does not prevent the Directors and Officers from making factual inquiries into damages at this point in litigation. Discovery of the factual basis for the insolvency claim and alleged damages may aide the Directors and Officers in conducting further discovery and preparing their case. As agreed in the hearing on this matter, despite ambiguous wording, the Directors and Officers do not seek discovery of Western's legal theories. For the reasons previously articulated, the Court finds the discovery relevant and proportional and grants the Motion as to Western's financial status on the date of the Liquidation Order.

3. **Reinsurance**

The Directors and Officers further seek testimony on topic twenty-three regarding reinsurance policies, payments, and settlements relating to liability and/or damages. Western's objection to this topic seems to admit relevance in that Western "objects" that the Directors and Officers should have caused reinsurance claims to be made prior to liquidation and failing to do so lost millions of dollars for the company. (Obj. & Resp. to Am. Notice of R. 30(b)(6) Dep. of W. Ins. Co. 11, ECF No. 45-1.) Given this assertion, the Directors and Officers would be entitled to discovery regarding the policies, payments, and settlments to prepare their defense to the assertion. To the extent Western claims it has not received any reinsurance, the Directors and

Officers can inquire about that for purposes of verification because if Western had received payment for claims, depending on the policy and the claims, that payment may provide evidence of the claims' value on the day of liquidation as articulated above.  Therefore, the Court finds this discovery regarding reinsurance relevant and proportional and thus grants the Motion as to this topic.

### 4.   American Asphalt

Lastly, the Directors and Officers seek to depose Western about all communications, conversations, or agreements between the Liquidator and American Asphalt involving Western Insurance.  At the Motion hearing, the Directors and Officers explained that they must ask about this topic to assess whether privity exists between American Asphalt and Western for purposes of asserting issue preclusion against Western from *American Asphalt & Grading Co. v. Bowman.*  The Directors and Officers also assert that the information to support this argument would not appear in the public record.  The topic sweeps more broadly than the discovery needed to establish privity.  The Court limits the Directors and Officers' inquiry to questions bearing on the issue of privity between American Asphalt and Western.  Specifically, the Directors and Officers may ask questions to determine whether American Asphalt was so identified in interest with Western that in *American Asphalt & Grading Co. v. Bowman* American Asphalt represented Western's legal rights at that time.  *See Searle Bros. v. Searle*, 588 P.2d 689, 691 (Utah 1978) (explaining privity inquiry); *see also Moss v. Parr Waddoups Brown Gee & Loveless,* 2012 UT 42, ¶ 23, 285 P.3d 1157 (stating elements of issue preclusion).   The Court finds Western is the best source of information about its relationship with American Asphalt.  Under these circumstances, the Court grants the Directors and Officers' Motion regarding American Asphalt with limitations.  These limitations assure the relevance and proportionality of the discovery.

## **<u>Conclusion</u>**

This Court Grants the Motion in Part as set forth above and Denies the remainder.

DATED this 28th day of December, 2016.

BY THE COURT:

*Evelyn J. Furse*
EVELYN J. FURSE
United States Magistrate Judge
