Gerald H. Suniville (3160) (gsuniville@fabianvancott.com)
Scott M. Lilja (4231) (slilja@fabianvancott.com)
Nicole M. Deforge (7581) (ndeforge@fabianvancott.com)
FABIAN VANCOTT
215 S. State Street, Suite 1200
Salt Lake City, Utah 84111
Telephone: 801.531-8900
Facsimile: 801.531-1716

*Attorneys for Lennard W. Stillman, as*
  *Special Deputy Liquidator of Western Insurance Company*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>WESTERN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DICK L. ROTTMAN, JEFFREY P. SHAFFER, JANICE LYNN BOWMAN, BRADLEY A. PEARCE, R. SCOTT ROTTMAN, and JOHN DOES 1 THROUGH 10, individuals<br><br>Defendants. | **WESTERN INSURANCE COMPANY'S OBJECTION TO MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DISCOVERY (ECF NO. 51)**<br><br>Civil No. 2:13-cv-00436-DAK<br><br>Hon. Dale A. Kimball<br><br>Magistrate Evelyn J. Furse |

Western Insurance Company in Liquidation ("Western"), by and through Lennard W. Stillman as Special Deputy Liquidator ("Liquidator"), submits this Objection to Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motion to Compel Discovery (ECF No. 51) ("Magistrate's Order"), pursuant to Rule 72 of the Federal Rules of Civil Procedure.

Defendants are former officers, owners and directors of Western, which was placed into Rehabilitation under the Utah Insurer Receivership Act in August 2011, with the consent of Western's management, and into Liquidation based on a determination of insolvency in September 2011. *See* Liquidation Order, Declaration of Insolvency and Restraining Orders, dated September 13, 2011 ("Liquidation Order"), attached as <u>Exhibit A</u>. Western's financial condition resulted from Defendants' misconduct as alleged in this case. Western is currently in liquidation pursuant to the Utah Insurer Receivership Act, Utah Code Ann. § 31A-27a-101 *et seq*. (the "Utah Act"). *Id.*

Defendants seek to depose the Liquidator in this case, not only as to the claims asserted on behalf of Western for events occurring prior to liquidation, as to which the Western estate will provide Rule 30(b)(6) testimony because the Liquidator lacks personal knowledge of these events, but also as to certain actions taken by the Liquidator himself in his role as liquidator during the liquidation process. Defendants seek to do the latter in an improper attempt to limit their pre-liquidation liability based on the post-liquidation status of Western. They drove Western into the ground and now incredibly demand the benefits realized through the liquidation process to reduce their own liability. Any discovery to support such improper defenses directly violates the provisions of the Utah Act and is entirely irrelevant to the claims at issue raised by Western.

Defendants also improperly seek to depose the Liquidator for the purpose of attacking the correctness of his actions and decisions in the Liquidation as part of their legal defense strategy. Such defenses are improper, as the Magistrate Judge recognized. Defendants cannot be permitted to depose the Liquidator to attempt to glean information solely to further such improper defenses. The information Defendants seek is therefore irrelevant and their requested discovery beyond the scope of permitted discovery.

Defendants cannot meet their burden of proving that the discovery they seek is relevant to any of their defenses properly before the Court. Under Rule 26, their motion to compel must be therefore be denied.

## ARGUMENT

1. **Judgments, Settlements, Litigation**

The Magistrate Judge incorrectly concluded that Defendants should be allowed to depose the Liquidator about post-liquidation judgments, settlements, and litigation carried out for the benefit of the Western estate. Defendants contend that such discovery is needed so that they can claim the benefit of any favorable settlements made by the Liquidator as an offset against their liabilities to Western. Such discovery is entirely improper under Utah law and the requested information irrelevant to any claims asserted against Defendants.

First, nothing that transpires during the liquidation process could have any possible bearing on the claims asserted against Defendants or the damages arising from those claims because both the bases for those claims and the damages to Western occurred entirely pre-liquidation. Defendants' liability for the funds they misappropriated from the company are simply the amount of those funds. Defendants' liability for the bad loans they sold to the company is simply the amount Western paid for those loans. Defendants' liability for rendering Western insolvent and continuing to incur debts after Western was insolvent is the amount of Western's increased obligations which were quantifiable at the date of liquidation. The damages for which Defendants are liable as a result of those claims are set as of the date of liquidation and are not impacted by any of the post-liquidation events into which Defendants now wish to conduct discovery. These post-liquidation events are irrelevant in this proceeding, and the requested deposition is therefore well beyond the scope of discovery. *See* Utah R. Civ. P.

3

26(b)(3) ("The party seeking discovery always has the burden of showing proportionality and relevance.")

Second, the Utah Act makes perfectly clear the fact that Defendants' liabilities to Western are entirely unaffected by post-liquidation litigation. Section 31A-27a-401(2) of the Utah Act expressly provides that the liabilities of the Defendants are "<u>fixed as of the day on which the order of liquidation is entered</u>." Utah Code Ann. § 31A-27a-401(2) (emphasis added). Those liabilities can be neither enlarged nor diminished in any way as a result of the outcome of any litigation in the Liquidation. *Accord* 44 C.J.S. *Insurance* § 240 (2016) ("If the company has been declared insolvent, or its dissolution has been decreed, or an order of liquidation has been entered against it, or its further continuance in business has been restrained by injunction, and a receiver has been appointed, the claims of policyholders become fixed and they cannot be enlarged or diminished by any event subsequently occurring.")

The reason for this is clear. The reality of the liquidation process is that regardless of the validity of claims made against the estate, there is never enough money to pay the full value of those claims. Creditors are typically paid only cents on the dollar. Consequently, creditors having perfectly valid claims may very well have those claims reduced or entirely disallowed based on priority under the Utah Act. They may therefore agree to settle those claims for much less to at least get something. The results of such post-liquidation settlements do not in any way reflect the validity or value of those claims "as of the day on which the order of liquidation is entered." They simply reflect what the creditor was willing to accept and the Liquidator was willing to give many months or years later when faced with the probability of no recovery in liquidation.

The NADC settlement, about which Defendants specifically seek to depose Western, is a perfect example of this. NADC filed a claim for $32 million in the Liquidation which was

4

determined by the Liquidator to be a Class 7 claim. Given the statutory claim priorities under the Utah Act and the deficit in the Western estate, there will be no money in the Western estate to pay any Class 7 claims.[1] *See* Declaration of Lennard W. Stillman ("Stillman Declaration"), attached as Exhibit B. Consequently, NADC would have received nothing in the liquidation, regardless of whether its $32 million claim were entirely valid. NADC therefore negotiated with the Liquidator to settle its Class 7 claim in exchange for a Class 3 claim in the amount of $100,000. *Id.* This settlement in no way quantified the actual value of the NADC claim—it merely reflects the harsh realities of insolvency and liquidation as to the recoverability of a claim. The amount that NADC accepted to settle its claim as a result of the exigencies of liquidation—a liquidation caused by Defendants—is in no way probative of the actual value of the NADC claim as "fixed" on the date of liquidation. Nor can it be used by Defendants to reduce the amount of their liabilities to Western because the claims made by Western are not based on the amount of NADC's claim. As stated above, those damages arose from specific acts of Defendants pre-liquidation and are determined as of the date of the liquidation order.

For similar reasons, settlement discussions and agreements are not admissible to "prove or disprove liability for or the validity or amount of a disputed claim." Utah R. Evid. 408. They simply do not reflect the actual value of claims—they reflect only what the parties were willing to give and take in order to resolve the claim, save litigation expenses, and manage risk. Yet Defendants concede that the only reason they want to conduct such discovery is to establish or challenge the validity or amount of Western's claim against them. This is precisely what they cannot do under Rule 408 or Section 401(2) of the Utah Act.

---

[1] In fact, there is a $44 million deficit in paying the Class 3 claims, meaning nothing will be paid to any lower priority claim under the Utah Act. *See* Stillman Declaration, attached Exhibit B.

The Magistrate Judge's decision to allow such discovery was based solely on her flawed conclusion that Section 401(2) could be construed to allow evidence of the outcome of litigation of a claim "as evidence of the value of that claim on the liquidation date depending on the circumstances of the settlement or judgment." *See* Order at 4. This conclusion reflects a fundamental misapprehension of the claims asserted here, the liquidation process and flies in the face of the governing liquidation statutes and the Utah Rules of Evidence. Even the Magistrate's use of the qualifying phrase, "depending on the circumstances of the settlement of judgment," is a tacit acknowledgment of the inherent problems with relying on settlements to prove or disprove the validity or amount of a claim, particularly in a liquidation proceeding. *See id.* Even assuming claim settlements had some relation to Western's claims and damages, and they do not, the only way to determine the true probative value of such a settlement would be to conduct discovery into the Liquidator's reasons and motivations for the settlement. Yet, this is precisely what the Magistrate Judge correctly ruled the Defendants could not do under the case law, stating that "[t]his Court does not permit inquiry into the reasoning behind the Liquidator's actions or achievements." *Id.* at 2, 4.

The Magistrate Judge is similarly mistaken in her belief that allowing Defendants to depose the Liquidator about these matters would "not require a detailed examination into the propriety of the Liquidator's actions in the way a comparative negligence or similar defense would." *Id.* at 4. Such inquiry would directly place the Liquidator's actions at issue. With the NADC settlement, for example, the Liquidator would be required to defend and explain his actions and motivations in connection with the settlement to refute Defendants' arguments that the settlement was somehow probative of the value of the claim, again assuming the NADC claim somehow impacts the claims and damages asserted by Western. Again, this is entirely inappropriate under the relevant case law.

6

Third, the Magistrate Judge's ruling is based on an asserted defense which is completely perverse. The Defendant officers, owners and directors of this insolvent insurance company seek to reduce the damages they have caused to Western pre-liquidation by taking advantage of settlements made as a result of the very liquidation process that they necessitated. In fact, the worse Defendants' conduct, the greater Western's damages, and the less money there is to pay creditors, the more creditors will be forced to accept very little or risk getting nothing. By their theory, the more successful the Defendants were at looting the company or running it in the ground, the less their liability would be to the company. If, as the Magistrate Judge concluded, such settlements were "evidence of the value of that claim on the liquidation date," then the officers and directors could virtually eliminate their liability to the company. Surely this is not the law.

Defendants cannot be allowed to benefit from their wrongful conduct by claiming the strange fruits of the liquidation process to reduce their liability to Western. To permit such a thing would be directly contrary to the public policies underlying the Utah Act. Defendants liability to the company is indeed "fixed" as of the date of the Liquidation Order and can neither be reduced or diminished by any post-liquidation events. *See* Utah Code Ann. § 31A-27a-401(2). Any discovery into post-liquidation litigation or settlements is therefore contrary to Utah law and beyond the scope of discovery in this case.

2. **Financial Condition**

Defendants also seek to depose the Liquidator about the financial condition of Western as of the date of liquidation. By their own admission, Defendants want this information to establish that Western had enough assets at that point to repay all collateral claims, that the "Special Liquidator should have paid the claims" instead of "administrative and other expenses of the

7

estate," and that "had the Special Liquidator done so, there could be no liability."[2] (Defs' M. to Compel Discovery at 11.) Yet, these are precisely the type of defensive attacks on the actions of the Liquidator that Defendants are precluded from asserting, as the Liquidator correctly concluded.

Courts have consistently recognized that officer and director defendants are not permitted to assert affirmative defenses premised on the Liquidator's actions in conducting the liquidation or to conduct discovery concerning those actions. *See Foster v. Monsour Med.,* 667 A.2d 19, 20-21 (Pa. Comm. Ct. 1995); *Foster v. Rockwood Holding Co.,* 632 A.2d 335, 338 (Pa. Comm. Ct. 1993); *see F.D.I.C. v. Mijalis*, 15 F.3d 1315, 1323-24 (5th Cir. 1994); *Resolution Trust Corp. v. Youngblood*, 807 F. Supp. 765, 771 (N.D. Ga. 1992); *Federal Sav. & Loan Ins. Cor.p v. Burdette*, 718 F. Supp. 649, 661-63 (E.D. Tenn. 1989); *In re Donald Shelton & Co., Inc.*, 153 B.R. 661, 663-66 (Bkrtcy. S.D.N.Y. 1993). As stated in the context of the FSLIC, and often cited in other receivership contexts including insurance liquidation:

> Suits by the FSLIC as a receiver to recover assets, or to recover damages for wrongdoing, **should not be encumbered by an examination in court of the correctness of any specific act of the FSLIC in its receivership**. The rule that there is no duty owed to the institution or wrongdoers by the FSLIC/Receiver is simply a means of expressing the broad public policy that the . . . laws creating the FSLIC and prescribing its duties are directed to the public good, and that **every separate act of the FSLIC as receiver in collecting assets is not open to second guessing in actions to recover damages from wrongdoing officers and directors**. If there is no wrongdoing by the officer and director, there can be no liability, but if wrongdoing is established, the **officer or director should not be allowed to set up as a defense a claim that would permit the detailed examination of the FSLIC's action as receiver**.

*Burdette*, 718 F. Supp. at 663 (emphasis added); *quoted in Monsour,* 667 A.2d at 20 (applicable in insurance liquidation); *Rockwood Holding,* 632 A.2d at 337-38 (applicable in insurance

---
[2] Defendants' argument conveniently ignores the Utah Act and its provisions which dictate the conduct of the liquidation and the priority, allowance and payment of claims once a liquidation order is entered. Utah Code Ann. §§ 31A-27a-101 *et seq.*; *see also* Liquidation Order, attached Exhibit A. Even assuming that there was no $44 million deficit in this liquidation, it is readily apparent from the Utah Act that had the Liquidator acted as Defendants suggest, he would have been in contempt of the Liquidation Court.

8

liquidation). The Magistrate Judge properly relied upon these cases in ruling that Defendants could only make "factual inquiries into damages." Yet, Defendants intend to use this factual information for the sole purpose of raising improper defenses that attack the correctness of the Liquidator's actions. Because those defenses are not permitted, the information Defendants claim to need from the Liquidator to support such defenses is wholly unnecessary and beyond the scope of discovery.

Moreover, it is undisputed is that there is not remotely enough money to pay all of the claims regardless of how the Liquidator classified the claims or in what priority he paid the claims. The March 31, 2016 Court Report filed in the Liquidation reflects that the Western estate has assets of $11.8 million with claims against the estate exceeding $56 million. *See* Stillman Declaration, attached as Exhibit B. Regardless of whether the Liquidator paid the collateral claims, there would still be a deficit exceeding $44 million. *Id.* But the allowance and priority in which the Liquidator paid the claims was dictated by the Utah Act and therefore are beyond challenge in any event. Utah Code Ann. §§ 31A-27a-101 *et seq*.; Liquidation Order, attached as Exhibit A.

Because Defendants wish to depose the Liquidator as to the financial condition of Western at the time of the Liquidation Order for the illegitimate purpose of raising improper defenses based on the correctness of the Liquidator's post-liquidation decisions, Defendants' requested discovery must be denied. It is clearly outside the scope of permissible discovery and not relevant to any claims or permissible defenses in this action.

3. **Reinsurance Proceeds**

Defendants also seek to depose the Liquidator concerning insurance policies and proceeds for the sole purpose of attempting to offset any insurance settlements or payments received by Western post-liquidation to reduce their pre-liquidation liability. This discovery is

impermissible for many of the same reasons as discovery regarding litigation settlements. For the reasons discussed above, post-liquidation insurance settlements simply are not relevant to Western's pre-liquidation claims or damages or probative of the actual value of any claim as of the date of the Liquidation Order and are not admissible to prove or disprove liability or the amount thereof regardless.

Additionally, the collateral source rule forecloses Defendants' attempt to offset insurance payouts against their liabilities to Western. *See Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶ 37, 96 P.3d 893 ("The collateral source rule provides that a wrongdoer is not entitled to have damages, for which he is liable, reduced by proof that the plaintiff has received or will receive compensation or indemnity for the loss from an independent collateral source.") Defendants do not dispute that this rule applies to the type of tort claims asserted against Defendants; they simply argue that the rule does not apply in an insurance liquidation proceeding. The cases Defendants rely on for that theory are entirely inapposite.

At issue in *FDIC v. United Pac. Ins. Co.*, 20 F.3d 1070 (10th Cir. 1994), was a *litigation* settlement, not an insurance payment or settlement. There is no question that insurance payments fall within the collateral source rule and are, in fact, the primary basis for the rule.

At issue in *FDIC v. Mmahat*, 907 F.2d 546 (5th Cir. 1990), was whether a settlement by one defendant should be credited against the amount claimed against a different defendant for an overlapping claim. That is not remotely the issue here. This case has nothing whatsoever to do with insurance payments. Moreover, in *Mmahat*, the claims for which the offset was given overlapped the damages claimed against the other defendant. That also is not the case here. Regardless of whether the collateral source rule applies, the damages for which Defendants are liable do not overlap those for which reinsurance could be paid. Accordingly, there is no basis

10

under the *Mmahat* case or any other legal principle for allowing an offset of reinsurance proceeds against Defendants' liabilities to Western.

Defendants also wrongly contend that the collateral source rule does not apply because Western has asserted statutory claims in addition to tort claims against them. They then argue without authority or explanation that Western's statutory claims are more akin to contract claims than tort claims and therefore the collateral source rule should not apply to those. In reality, the only statutory claims that were initially asserted against Defendants were for fraudulent transfers, which were dismissed, and preferential transfers, which have not been pursued. There are no effectively no remaining statutory claims against Defendants, and the information now sought by Defendants would not go to those claims regardless.

Even if there were remaining statutory claims, those claims would be grounded on tort-law concepts of breach of fiduciary duty. Consequently, there would be no basis for refusing to apply the collateral source rule to such claims. The policies underlying application of the collateral source rule to insurance proceeds in tort cases warrants application to the statutory claims as well.

> The rationale for the rule is at least two-fold: First, public policy favors giving the plaintiff a double recovery rather than allowing a wrongdoer to enjoy reduced liability simply because the plaintiff received compensation from an independent source. Second, by assuring a plaintiff's payments from a collateral source will not be reduced by a subsequent judgment, the rule encourages the maintenance of insurance.

*Green v. Denver & Rio Grande W. R. Co.*, 59 F.3d 1029, 1032 (10th Cir. 1995) (internal citations omitted); *accord Mahana*, 2004 UT 59, ¶ 39 ("[T]he collateral source rule is applied most often to insurance recoveries, where victims have paid premiums, and where it would consequently be unfair to shift the benefit of such recovery to tortfeasors.").

11

Western paid the premiums for its reinsurance policies for many years. Defendants cannot now claim the benefit of those policies at the expense of Western. To do so would "effectively penalize Western for having the foresight to obtain reinsurance." *See Kadlec Med. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 425-26 (5th Cir. 2008). Given the underlying policy considerations, there is absolutely no reason to apply the collateral source rule to Western's tort claims but not to the statutory claims asserted against Defendants.

Finally, the claims for which reinsurance proceeds might be paid have no direct relationship to the damages sought by Western from Defendants. As discussed above, Western's claims and the damages associated with those claims arose and are determined pre-liquidation. Nothing occurring in the liquidation under the Utah Act impacts the claims or damages in any way.

In short, the information sought by Defendants from the Liquidator concerning reinsurance payments is completely irrelevant and beyond the scope of discovery. Neither the receipt of insurance payments or the lack thereof any probative to the claims or defenses in this case.

### 4. American Asphalt

The Magistrate Judge also incorrectly concluded that Defendants could depose the Liquidator concerning "the issue of privity between American Asphalt and Western." (Order at 7.) Yet, Defendants never claimed that this was the reason for their need to depose the Liquidator concerning this case. They merely claimed that Western provided information and documents to American Asphalt and also that they needed to "ask the Special Liquidator about the similarities and differences between the claims and evidence in that case and the claims and evidence in this case." (Defs' M. to Compel at 14; Reply at 9.) Neither of these issues remotely go to the issue of privity. There is no privity between Western and American Asphalt and no contention by

Defendants that there is. Without privity, there is absolutely no possible application of issue preclusion based on the American Asphalt case and no reason to conduct discovery as to that issue by deposing the Liquidator.

## **CONCLUSION**

Based upon the foregoing, Western respectfully requests that the Magistrate's Order be reversed and that the Court deny Defendants' Motion in all respects.

Dated this 11th day of January, 2017.

                              FABIAN VANCOTT

                              /s/ *Nicole M. Deforge*
                              Gerald H. Suniville
                              Scott M. Lilja
                              Nicole M. Deforge

                              *Attorneys for Lennard W. Stillman,*
                              *Special Deputy Liquidator of Western Insurance Company*

# CERTIFICATE OF SERVICE

I certify that on this 11th day of January, 2017, I electronically filed the foregoing **WESTERN INSURANCE COMPANY'S OBJECTION TO MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DISCOVERY (ECF NO. 51)** with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following:

>Michael R. Johnson, Esq.
>Matthew N. Evans, Esq.
>RAY QUINNEY & NEBEKER P.C.
>36 S. State Street, 14th floor
>Salt Lake City, Utah 84101
>mjohnson@rqn.com
>mevans@rqn.com
>
>Richard L. Elmore
>3301 S. Virginia Street, Suite 125
>Reno, NV 89502
>relmore@rlepc.com

By: /s/ *Nicole M. Deforge*

4826-6924-2176, v. 2